OPINION
HOYT, Justice.
This is an appeal from a summary declaratory judgment entered on behalf of appel-lees, Allied Corporation (Allied), Texas Commerce Bank, N.A., Trustee, and W.C. Rosson, Trustee (Trustees). Appellants, Successors to the Interest of Rea-Glass, Inc. (Rea-Glass), commenced this suit seeking to restrain the Trustees from transferring certain pipeline equipment and rights-of-way to Allied. The trial court granted Rea-Glass’ temporary injunction, but subsequently granted Allied’s motion for summary declaratory judgment. We affirm.
Allied owned properties in Reagan, Upton, Sterling, and Glassrock Counties, where it was building the Reagan-Glass-rock Gas Gathering Pipeline System. On March 1, 1967, Allied and Rea-Glass, Inc. entered into a sale-leaseback arrangement on the properties.
In order to finance the sale and at the same time pay for construction of the pipeline Rea-Glass, as purchaser, executed a note secured by a deed of trust on the equipment and rights-of-way. So that the financing plan could be administered and the noteholders’ interests protected, Texas Commerce Bank, N.A., and W.C. Rosson were appointed Trustees. Allied then leased the property from Rea-Glass and made rental payments through the Trustees. The rental payments were used first to pay the note, and any excess was paid to Rea-Glass. The final payment of $607,-708.69 included the last rental payments on the lease ($219,027.48) and the balance due on the note ($388,681.21). The lease payment and the note payment were due on June 1, and July 1, 1982, respectively. Consequently, Allied would be liable for $388,681.21 in addition to the final lease payment, depending on which options Rea-Glass exercised under the lease agreement.
*389 Under the terms of the lease, both Allied and Rea-Glass could make various elections; however, the elections were to be made before May 31, 1982. If Rea-Glass failed to make an election, the Trustees were empowered, under the Trust Indenture, to execute and deliver title to the equipment and rights-of-way to Allied in exchange for the balance on the note.
In three points of error, Rea-Glass contends that the trial court erred in failing to grant a partial summary judgment in its favor and further erred in granting a summary declaratory judgment on behalf of Allied because there is a disputed material fact question.
All parties agree that the outcome of the case turns on an interpretation of sections 4.09, 7.01(d), and 16(c) of the Note Purchase Agreement and Related Financing Documents manual. Section 4.09 provides that Rea-Glass (the Company) will either deliver a Lease Agreement 16(c) notice to Allied or pay the balance due on the notes on or before May 31, 1982. It states in pertinent part:
If the Company shall not so deliver the notice or make the payment referred to above, or if, after delivering such notice, the Company shall fail to comply with the Lease or cause the same to be complied with, the Trustees or either of them shall and are hereby irrevocably appointed the attomeys-in-fact to prepare and deliver such notice to Lessee and take all necessary action to comply with the Lease including, without limitation, the execution and delivery, in the name and on behalf of the Company of a bill of sale or other instrument of conveyance or assignment conveying or assigning the Equipment and Rights-of-Way to Lessee.
(Emphasis added.)
Section 7.01(d) provides for a cure in the event of default by Rea-Glass. In pertinent part, it states the following:
If default shall be made in the due observance or performance of any other provision of this Indenture to be observed or performed by the Company, and such default shall have continued for a period of 30 days after notice specifying such default shall have been given to the Company and Lessee by the Trustee or, if such default cannot be cured by the payment of money and cannot with due diligence be wholly cured within such 30-day period, if the Company shall fail to proceed promptly to cure the same and thereafter prosecute the curing of such default with all due diligence; or ....
(Emphasis added.)
Rea-Glass contends that because it failed to exercise either of the section 4.09 options, it was in default. It is undisputed that Rea-Glass performed neither of these acts. However, Rea-Glass urges that this failure is a default and triggers section 7.01(d) because it failed to duly observe or perform a provision of the Indenture.
Rea-Glass cites Purnell v. Follett, 555 S.W.2d 761 (Tex.Civ.App.—Houston [14th Dist.] 1977, no writ), for the proposition that it had notice and redemption rights under former art. 3810, of the Revised Civil Statutes. Tex.Rev.Civ.Stat.Ann. art. 3810.[1] Succinctly, art. 3810 provides for notice in the event of a sale of real estate because of default where the power of sale is conferred by a deed of trust or contract lien.
Generally, a deed of trust is a mortgage with a power to sell on default. Johnson v. Snell, 504 S.W.2d 397, 399 (Tex.1973). The deed of trust sets out the respective rights of the parties in the event of default. Upon default, the noteholder has the option of accelerating maturity of the note secured by the deed of trust. Acceleration requires the noteholder to make demand on the debtor and to provide notice of his intent to accelerate. See Wylie v. Hayes, 114 Tex. 46, 263 S.W. 563 (1924); Erickson v. Rocco, 433 S.W.2d 746 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).
*390 We find that neither article 3810 nor Purnell v, Follett is applicable; this case does not concern a foreclosure and sale of real estate because the note was not in default. The note was not due until July 1, 1982 and Rea-Glass’ failure to exercise its options on or before May 31, 1982, did not constitute a default in the note obligation. We overrule Rea-Glass’ contention that it had a statutory right to extend the date by which it had to act.
The eventuality that Rea-Glass would not perform by May 31, was provided for under section 16(c) of the lease agreement, which stated that Allied was required to pay the final note if Rea-Glass or its attorney-in-fact notified Allied to do so. We therefore overrule appellants’ contention that partial summary judgment should have been entered on their behalf. Similarly, we overrule appellants’ contention that a disputed material fact question exists.
 The question of whether a contract is ambiguous is one of law for the court, R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex.1980), which must ascertain and give effect to the intentions of the parties as expressed in the instrument. Id. We hold that the Trust Indenture Agreement is unambiguous clearly reflecting the parties’ intention that if Rea-Glass failed to make the final note payment before May 31, 1982, either Rea-Glass or the Trustees would notify Allied to make the final payment.
The judgment of the trial court is affirmed.

. Ch. 118, 1889 Tex.Gen.Laws 1171, repealed by Ch. 576, 1983 Tex.Gen.Laws 3729.